**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**  **Plaintiff,**  v.  **BAKOTIC PATHOLOGY ASSOCIATES, LLC,**  **Defendant.** | **CIVIL ACTION NO.**  **JURY TRIAL DEMAND** |

## COMPLAINT

This is an action under Title I of the Civil Rights Act of 1991 and Title VII of the Civil Rights Act of 1964, as amended ("Title VII") to correct unlawful employment practices and to provide appropriate relief to Jasmine Hudson ("Hudson"), who was adversely affected by the unlawful employment practices. The Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant Bakotic Pathology Associates, LLC ("Defendant") subjected Hudson to discrimination on the basis of her sex (female, pregnancy), and retaliation because of her engagement in statutorily protected activities, when her employment was terminated in violation of Title VII.

-1-

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized pursuant to: Sections 706(f)(1) and (3) of Title VII, 42, U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of both Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), 42 U.S.C. § 2000e-6.

4. At all relevant times, Defendant has conducted business in the state of Georgia and has continuously maintained at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under 42 U.S.C. § 2000e(b).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Hudson filed a Charge of Discrimination with the Commission alleging violations of Title VII by Defendant.

8. On January 19, 2023, the Commission issued a Letter of Determination finding reasonable cause to believe that Defendant had violated Title VII and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. On May 18, 2023, the Commission issued to Defendant a Notice of Failure of Conciliation.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

13. In or about July 2020, Hudson began her employment with Defendant.

14. Hudson's position with Defendant was Molecular Laboratory Technician.

15. As a Molecular Laboratory Technician, Hudson performed and interpreted laboratory tests in Defendant's Molecular Pathology Laboratory for use by others in the diagnosis and care of individuals.

16. In approximately December 2020, Hudson received a performance-based award for her work as a Molecular Laboratory Technician.

17. On approximately January 2, 2020, Hudson received, reviewed, and signed an annual performance appraisal which rated her as meeting expectations in all assessed areas.

18. The January 2, 2020, performance appraisal of Hudson did not contain any references to attendance, tardiness, behavioral, or performance issues of any kind.

19. At all relevant times, Hudson was qualified for her position with Defendant.

20. At all relevant times, Hudson satisfactorily performed her duties for Defendant.

21. Hudson became pregnant in the second half of 2020.

22. Hudson informed her supervisor of her pregnancy soon after she became aware of it.

23. In approximately December 2020, Hudson began to suffer pregnancy-related symptoms, including episodes of intense back pain, occasional spotting, and she was determined to be at high-risk of contracting COVID-19.

24. Occasionally in December 2020 and January 2021, Hudson's symptoms would require her to miss work, show up late to work, or leave work early.

25. Charging Party notified her supervisor whenever her pregnancy-related symptoms would require her to miss work, show up late to work, or leave work early.

26. On or about January 7, 2021, Hudson was forced to miss work because she was experiencing pregnancy-related back pains, and she notified her supervisor pursuant to Defendant's policy regarding unscheduled absences.

27. On January 8, 2021, Defendant placed Hudson on an "Employee Development Plan."

28. The January 8, 2021, "Employee Development Plan" was the first disciplinary action Defendant recorded with respect to Hudson.

29. At no point prior to January 8, 2021, did Defendant document any disciplinary issues with respect to Hudson.

30. At no point prior to January 8, 2021, did Defendant document any attendance issues with respect to Hudson.

31. At no point prior to January 8, 2021, did Defendant document any behavioral issues with respect to Hudson.

32. At no point prior to January 8, 2021, did Defendant document any tardiness issues with respect to Hudson.

33. At all relevant times, Defendant's progressive discipline policy called for (1) accurate and timely documentation of employee issues by their supervisors; (2) consistent corrective action; (3) informal coaching prior to resorting to formal corrective action; (4) written records of all informal corrective actions; (5) written notices to employees when informal corrective action has failed; and (6) placement of employees on a "Final Development Plan" when all prior measures have been unsuccessful at correcting the underlying issue.

34. At all relevant times, employees placed on a "Final Development Plan" pursuant to Defendant's disciplinary policy were subject to termination if they failed to meet the objectives outlined in the plan.

35. The January 8, 2021, "Employee Development Plan" issued to Hudson was a "Final Development Plan."

36. Hudson's January 8, 2021, "Final Development Plan" listed no prior formal or informal corrective actions taken.

37. Hudson's January 8, 2021, "Final Development Plan" had an expiration date of "NEVER."

38. Hudson's January 8, 2021, "Final Development Plan" alleged the following prior "incidents": (1) violation of policy or procedure; (2) performance issues; (3) behavior issues; and (4) attendance issues.

39. Prior to January 8, 2021, Defendant never communicated to Hudson any issues regarding violations of policy, performance issues, or behavioral issues.

40. Prior to January 8, 2021, Defendant never instituted any formal or informal coaching or corrective action with respect to any issue identified in Hudson's "Final Development Plan."

41. Hudson's January 8, 2021, "Final Development Plan" contravened Defendant's ordinary policy and practice.

42. When Hudson asked Defendant for clarification regarding her alleged infractions, Defendant's Director of Human Resources refused to discuss the issue.

43. Hudson signed the "Final Development Plan" out of fear of losing her job.

44. On or about January 17, 2021, Hudson was forced to miss work due to pregnancy-related symptoms.

45. Hudson provided a doctor's note regarding her absence upon her return.

46. On or around January 25, 2021, Hudson and Defendant discussed and agreed to a new work schedule for Hudson, to accommodate her need for pregnancy-related doctor's appointments.

47. In approximately late January 2021, Defendant's Director of Human Resources told Hudson that if she incurred any more absences or incidents of tardiness—whether or not she provided a doctor's note—her employment with Defendant would be terminated.

48. On or around January 31, 2021, Defendant informed Hudson that she had been exposed to COVID-19 while at work.

49. Hudson contracted the virus as a result of this exposure and self-quarantined for two weeks.

50. During Hudson's self-quarantine, on or about February 12, 2021, she was admitted to a hospital.

51. On or about February 12, 2021, Hudson went into preterm labor.

52. On or about February 12, 2021, Hudson suffered a miscarriage.

53. On or about February 15, 2021, Hudson provided Defendant with medical documentation excusing her from work while she recovered.

54. On or about February 15, 2021, Hudson applied for short-term disability leave for her recovery.

55. Hudson's application for leave was granted for a leave period of February 12, 2021, until March 13, 2021.

56. Despite her disabled status, on or about February 15, 2021, Hudson feared she would be terminated due to her hospitalization.

57. On or about February 15, 2021, Hudson emailed Defendant's Chief Executive Officer to complain about Defendant's treatment of her throughout her pregnancy, which she reasonably perceived as discriminatory.

58. In approximately late February 2021, upon the advice of her doctor, Hudson applied for a four-day extension of her short-term disability leave.

59. Hudson's application for an extension of her leave was supported by a note from a physician.

60. On March 3, 2021, Lincoln Financial Group, Defendant's third-party administrator with respect to short-term disability leave, granted Hudson's extension application.

61. On March 3, 2021, Lincoln Financial Group sent Hudson a letter informing her of the extension of her leave and related benefits.

62. A copy of the March 3, 2021, letter from Lincoln Financial Group regarding the extension of Hudson's leave was sent to and received by Defendant.

63. Hudson's first shift after her leave ended was scheduled for March 19, 2021.

64. When Hudson arrived for her March 19, 2021, shift, she was informed by Defendant's Director of Human Resources that her employment had been terminated on March 15, 2021.

65. Defendant terminated Hudson's employment for failure to appear or call in on March 13, 2021, and March 14, 2021.

66. Hudson was on approved short-term disability leave on March 13, 2021, and March 14, 2021.

67. Defendant had knowledge of Hudson's approved short-term disability leave.

68. Defendant made no effort to undo, correct, or rescind its termination of Hudson after speaking with her on March 19, 2021.

69. Defendant made no effort to contact Hudson on March 13, 2021, March 14, 2021, or March 15, 2021.

70. By classifying Hudson's actions as a resignation of her employment, Defendant intentionally deprived her of additional benefits, such as accrued time off.

71. When Hudson subsequently applied for unemployment compensation benefits, Defendant opposed her application, stating incorrectly that Hudson had voluntarily abandoned her job.

72. Defendant's knowingly incorrect statement in opposition to Hudson's application for unemployment compensation caused her application to be denied.

## STATEMENT OF CLAIMS

### *Sex Discrimination*

73. Since at least January 2021, Defendant has engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2 by discriminating against Hudson on the basis of her sex.

74. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 72 as if fully asserted herein.

75. Hudson, who was female and pregnant, was a member of a protected class.

76. Hudson was qualified for her position with Defendant.

77. Defendant's treatment of Hudson between the time she disclosed her pregnancy, and her termination was motivated by her pregnancy and pregnancy-related symptoms.

78. Defendant's treatment of Hudson and her termination because of her pregnancy was done intentionally and with reckless disregard of her federally protected rights.

79. The unlawful employment practices complained of above have deprived Hudson of equal employment opportunities and have otherwise adversely affected her status as an employee because of her pregnancy, a condition of her sex (female).

## *Title VII Retaliation*

80. Since at least March 2021, Defendant has engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-3(a) by retaliating against Hudson for engaging in protected activity.

81. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 72 as if fully asserted herein.

82. On approximately February 15, 2021, Hudson expressed to Defendant opposition to conduct she reasonably and in good faith believed violated Title VII.

83. On approximately March 15, 2021, Hudson suffered the adverse employment action of Defendant's termination of her employment.

84. Defendant terminated Hudson's employment approximately one month after she engaged in protected activity by expressing opposition to conduct she reasonably and in good faith believed violated Title VII.

85. Defendant's termination of Hudson because of her protected activity was done intentionally and with reckless disregard of her federally protected rights.

86. The unlawful employment practices complained of above have deprived Hudson of equal employment opportunities and have otherwise adversely affected her status as an employee because of her participation in statutorily protected activity.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, successors, assigns and all persons in active concert or participation with Defendant, from engaging in employment practices that discriminate against pregnant employees and that retaliate against employees who engage in protected activity under Title VII.

B.    Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for pregnant employees, and employees who engage in protected activity, and which eradicate the effects of past and present unlawful employment practices.

C.    Order Defendant to make Hudson whole, by providing appropriate back pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices.

D.    Order Defendant to make Hudson whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.    Order Defendant to make Hudson whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety,

stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.  Order Defendant to pay Hudson punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G.  Grant such further relief as the Court deems necessary and proper in the public interest.

H.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

*/s/ Iriel Jones*

Iriel Jones
Trial Attorney

Georgia Bar No. 266716
U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St. SW, Suite 4R30
iriel.jones@eeoc.gov
Telephone: 470-531-4808
Facsimile: 404-562-6905